**KERRY B., Plaintiff,**

v.

**UNION 53 PUBLIC SCHOOLS, Defendant.**

**Civ. A. No. 92–10278–PBS.**

United States District Court,
D. Massachusetts.

March 21, 1995.

**186**

Thomas F. Schiavoni, McGee & Schiavoni, Lynn, MA, for plaintiff.

Richard N. Sullivan, Kenney, Conley, Sullivan & Smith, Braintree, MA, for defendant.

## MEMORANDUM OF DECISION AND ORDER

SARIS, District Judge.

This case involves the appropriate educational placement of plaintiff Kerry B., a severely mentally retarded girl with autistic behavior, by the defendant Pentucket Regional School District (Union 53). Plaintiff seeks attorneys fees under the fee-shifting provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(e)(4)(B). On October 14, 1994, the magistrate judge issued a report and recommendation denying attorneys fees on the ground plaintiff was not a prevailing party, and plaintiff filed timely objections pursuant to Rule 3(b) of the Rules for Magistrates. Pursuant to 28 U.S.C. § 636(b), this Court must make a de novo determination of those recommendations. After hearing and review of the record, the court declines to adopt the report and recommendation and orders entry of judgment in favor of the plaintiff for attorney fees in the amount of $22,700.79.

## DISCUSSION

■ The factual background recited by the Magistrate Judge's Report and Recommendation is incorporated by reference and adopted except where stated:

### A. *Prevailing Party Standard*

Section 1415(e)(4)(B) provides:

In any action or proceeding brought under this subsection, the Court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

The standard governing attorneys fees disputes under the IDEA is the same as that developed in the context of civil rights statutes containing fee-shifting provisions, such as 42 U.S.C. § 1988. *See, e.g., Phelan v. Bell,* 8 F.3d 369, 373 (6th Cir.1993); *Fenneman v. Town of Gorham,* 802 F.Supp. 542, 546 (D.Me.1992); *Mr. D. v. Glocester Sch. Cte.,* 711 F.Supp. 66, 68 (D.R.I.1989). The seminal case in this area is Judge Coffin's opinion in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978). *Nadeau* set forth two separate tests for the awarding of attorneys' fees to a prevailing party: the merits test and the catalyst test.

### 1. Merits Test

Under the merits test, a prevailing party is one who "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the [plaintiff] sought in bringing suit' ..." *Texas State Teachers Ass'n v. Garland Indep. Sch. District*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1983) (quoting *Nadeau*, 581 F.2d at 279). "[A]t a minimum ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493. Even under this "generous formulation", the plaintiff cannot qualify as a "prevailing party" if his "success on a legal claim can be characterized as purely technical or *de minimis* ..." *Id.* "The touchstone of the prevailing party inquiry must be the *material alteration* of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792–793, 109 S.Ct. at 1493.

Thus the "prevailing party" criteria endorsed in *Texas Teachers* inquire whether the plaintiff obtained relief on a significant claim in litigation, effecting a material alteration in the parties' legal relationship, that is not merely technical or *de minimis* in nature. *Texas Teachers*, 489 U.S. at 791–93, 109 S.Ct. at 1492–93. "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, — U.S. —, —, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (surveying recent Court case law).

The degree of success achieved in the litigation is a "critical" factor in fixing the *amount* of an award. *Texas Teachers*, 489 U.S. at 789–90, 109 S.Ct. at 1492. *See also Farrar v. Hobby*, — U.S. — – —, 113 S.Ct. at 574–75 (a plaintiff who seeks compensatory damages but receives no more than nominal damages is often a party who formally prevails but who should receive no attorney's fees at all because fee awards were never intended to produce "windfalls to attorneys").

### 2. Catalyst Test

Under the catalyst test of the First Circuit, plaintiffs may be considered prevailing parties "when they vindicate rights through a consent judgment or without formally obtaining relief." *Nadeau*, 581 F.2d at 279. "[W]hen plaintiff's lawsuit acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims, attorney's fees are justified despite the lack of judicial involvement in the result." *Id.; see also Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). The good faith of defendants is not a controlling factor in determining whether or not plaintiffs merit an award. *Nadeau*, 581 F.2d at 280. "The key issue is the provocative role of the plaintiff's lawsuit, not the motivations of the defendant." *Id.* Where the plaintiff's efforts were a "necessary and important factor" in achieving the improvements, plaintiffs should be held "to have overcome their first hurdle toward their goal of recovering some attorneys fees." *Id.* at 281. This is not an "all or nothing determination", and based on many factors, the Court may reduce the amount of attorneys fees, for example, where the beneficial results are attributable to both parties. *Id.* Even if plaintiff can establish that the action was causally related to the defendant's actions which improved her condition, plaintiff must also establish that the conduct was required by law and not gratuitous. *Id.*

As stated recently by the First Circuit, under the catalyst theory, plaintiff must demonstrate "(1) a causal connection between the litigation and the relief sought and (2) that the success was not obtained by a gratuitous gesture of the fee-target." *Paris v. U.S. Dept. of Hous. & Urban Dev.*, 988 F.2d 236, 241 (1st Cir.1993); *see also Pearson v. Fair*, 980 F.2d 37, 44 (1st Cir.1992) (plaintiff must prove that the lawsuit caused the sought after improvements, and the improvements were more than of minor significance).

### B. The First Hearing

The first hearing before the Board of Special Education Appeals (BSEA) considered two questions: (1) whether the

1991–92 Individual Education Plan (IEP) designed for Kerry was "appropriate" so as to "assure her maximum feasible educational development in the least restrictive environment consistent with that goal"; and (2) if not, whether it would be appropriate to place Kerry in a residential program. The hearing officer concluded that the IEP was largely appropriate, and that residential placement was "overly restrictive for this student at this point in time." He did, however, order compensatory physical therapy services. In a post-hearing ruling regarding the plaintiff's prevailing party status, the hearing officer made the following findings:

> [T]he substantive components of the public school program, adjudged appropriate for the student, were not altered, augmented or enhanced to any significant degree by said decision.
>
> Parents did, however, secure an order as to provision of compensatory physical therapy services pursuant to the terms of the decision. It should be noted that the sufficiency of the physical therapy service plan was not challenged at hearing, nor was the issue of compensatory services raised by parents. However, as evidence elicited during the hearing revealed that provision of physical therapy services did not commence in timely fashion at the beginning of the academic year, compensatory services were ordered to redress this. *With regard then to this limited issue, parents should be assigned prevailing party status.*

(Emphasis added).
In this context the hearing officer, as a factfinder, is entitled to deference only for fact-based inquiries. *See Domegan v. Ponte,* 972 F.2d 401, 406–07 & n. 8 (1st Cir.1992) (discussing cases) *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993). Neither side disputed the hearing officer's factual finding that the claim for compensatory physical therapy services was not raised by the parents. However, the determination of whether plaintiff met the "prevailing party" test by prevailing on this "limited issue" is a question of law. *Id.*

 Because plaintiff failed to achieve the "primary goal" of placement in a residential facility, the magistrate judge held that she "did not succeed as to any significant issue, or achieve the *benefit sought* by bringing suit at the conclusion of the first hearing." (Emphasis added). Although the magistrate judge fairly points out that plaintiff did not prevail on her claim that the IEP was inappropriate, she did achieve some of the benefit sought in the litigation—improved educational services to assure her maximum feasible educational development. Under the merits test, plaintiff is a prevailing party because the compensatory physical therapy ordered by the BSEA effected a material alteration in the parties' legal relationship in a manner Congress sought to promote in the fee statute. *See Krichinsky v. Knox County Schools,* 963 F.2d 847, 850 (6th Cir.1992) (although parents were primarily seeking residential placement, the order to provide the student with additional therapy changed the "legal relationship"). Plaintiffs who prevail in the sense of obtaining relief that was not requested by them, but that was called into play by their claims, may be entitled to attorney's fees, for they have obtained "some of the benefit [they] sought in bringing suit." *Nadeau,* 581 F.2d at 279. *Cf. Mitten v. Muscogee Cty. Sch. Dist.,* 877 F.2d 932, 936 (11th Cir.1989) (noting that, under IDEA, "free and appropriate education" is both "the fundamental objective" and "the significant relief sought").

Although plaintiffs never made a specific demand for compensatory physical therapy services, the evidence at the hearing flagged the need for physical therapy. Litigation is not an all or nothing endeavor. Many courts have ruled that parents may be considered prevailing parties in an IDEA dispute if they obtain a significant revision of their child's IEP, even if they do not obtain the maximal objective of having their child placed in a residential facility. *See, e.g., Krichinsky v. Knox Cty. Schools,* 963 F.2d at 849–50 (IEP revised to include increased speech therapy and occupational therapy, and at-home behavioral management); *Mitten,* 877 F.2d at 936–37 (IEP revised to include 8 hours of instruction by licensed teachers during school day); *Fenneman,* 802 F.Supp. at 546–48 (IEP revised to include extended day academic program, instruction in study skills

and assistance in extracurriculars); *In re Mary S.*, B.S.E.A. No. 87–0805, slip op. at 7 (May 27, 1988) (IEP revised to include increased special education services and modifications to regular education, more appropriate class size and level, stricter coordination and oversight). While plaintiff's success was quite limited, it was not *de minimis*. The degree of success governs the amount of attorney fees awarded, not whether plaintiff qualifies as a prevailing party.

### C. *The Second Hearing*

■■■ Kerry completed the 1991–92 school year under her IEP. She attended school for a few days the following year, at which point her parents noticed that her body was covered with bruises. The parents withdrew Kerry from school, and filed a second appeal to the BSEA, seeking an emergency interim placement at a residential facility. A hearing was held on September 18, 1992 and a decision issued on October 23, 1992. The parents' position, according to the hearing officer, included not only the contention that the public school placement was not "safe" for Kerry, but also the contention that the "restraint procedures utilized by the classroom teacher were not written into the IEP, nor was parental consent sought or received for use of restraint."

The hearing officer concluded that both parties had acted in good faith—with the school authorities attempting to respond appropriately to Kerry's worsening behavioral problems, and the parents understandably upset over the resultant physical bruising to their daughter. The videotape provided by plaintiff amply demonstrates the basis for the parents' good faith concern. The officer rejected the parents' request for an emergency residential placement, but agreed that the school's failure to include physical restraints in the IEP, and the failure to obtain parental permission for such restraints, were in violation of the statute. She further noted that the placement of Kerry in a residential facility pursuant to normal procedures had become a distinct possibility; and ordered Kerry's supervisory team to convene immediately with Kerry's parents, to reconsider her needs in light of evolving circumstances.

The team met soon thereafter and resolved to place Kerry in a residential facility.

The magistrate judge rejected the argument that plaintiff's legal actions at the two BSEA hearings were a catalyst for Union 53's subsequent placement of Kerry in a residential facility. With respect to the first hearing, there is no evidence it was a catalyst for the educational placement the following school year. However, the administrative record supports a different conclusion with respect to the second hearing. The magistrate judge concluded that Kerry's residential placement was the result of her regression during the 2½ month period in which her parents took the "unilateral action" of withdrawing her from school. Plaintiff strenuously objects that the magistrate judge's finding is not supported by the administrative record. This court agrees with plaintiff. Whether Kerry would have regressed had she not been withdrawn from school cannot be determined based on this record. Indeed, prior to the withdrawal from school, Kerry had grabbed in anger at her new teacher and abused herself by head-banging. These incidents involving violence required her to be physically restrained. The hearing officer called these "unexpected and serious behavioral issues."

In light of plaintiff's unexpected regression at the start of the school year, she succeeded in obtaining an order that Kerry's supervisory team meet to consider new IEP options, including the option, which was sought by plaintiff at the hearing, of residential placement. Even if the team had not decided to move Kerry to a residential institution, the team would have been required, in light of the hearing decision, to alter her IEP to permit physical restraints. Under the merits test, the order that the team meet thus modified the legal relationship between the parties. *Cf. Phelan*, 8 F.3d at 374–75 (plaintiff deemed prevailing party where hearing officer ordered school system to implement a new IEP, and to consider as option the behavioral device sought by plaintiff at the hearing). Under the catalyst test, plaintiff has demonstrated a causal connection between the litigation and the relief sought, and the success was obtained not as a result a

gratuitous gesture by the school. This court therefore concludes that plaintiff should be awarded fees as a prevailing party for this hearing.

### D. *Relief*

■ "[T]he extent of a plaintiff's success [for purposes of a statute authorizing fee-shifting] is a practical question, involving a qualitative, as well as a quantitative, judgment." *Aubin v. Fudala,* 782 F.2d 287, 290 (1st Cir.1986) (citing cases). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, *or it may simply reduce the award to account for the limited success.*" *Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (emphasis added). Thus, a plaintiff may be entitled not only to fees for time spent on his winning claim, but also for time spent on claims that involve a "common core of facts" or "related legal theories." *Id.,* 461 U.S. at 435, 103 S.Ct. at 1940. District courts are accorded broad discretion in fee-setting matters. *Segal v. Gilbert Color Systems, Inc.,* 746 F.2d 78, 86 (1st Cir.1984) (citing cases).

■ In this case, the court has been provided with a thorough, reasonable breakdown of the plaintiff's legal expenses. Defendant does not contest the hourly rate or the number of hours expended. Based upon the extremely limited degree of success obtained as a result of the first hearing, this court awards plaintiff 10% of expenditures incurred for bringing the first appeal ($16,-262.50 × .10 = $1,626.25). *Compare Pearson v. Fair,* 980 F.2d 37, 46 (1st Cir.1992) (recognizing that there are cases which do not require a line-by-line explanation of the conclusion that the attorneys' fees must be reduced, court awarded only fifteen percent of total award claimed to reflect limited success).

■ As the second hearing was a substantial factor in obtaining the requested relief—a residential placement—I award the full amount of $15,318.75. Although plaintiff did not obtain her requested relief of an emergency *interim* placement in a residential facility, the hearing officer ordered an emergency team evaluation of plaintiff's appropriate educational placement based on the evidence presented at the hearing that plaintiff's condition had deteriorated to the degree that a modified IEP might be necessary. While the defendant school district was fully exonerated on the charge of physical abuse, nonetheless the hearing resulted in the long sought after residential placement.

■ With respect to the legal services rendered in this federal court litigation, unfortunately plaintiff's counsel has aggregated the "legal services rendered in post-adjudicatory period for compliance/implementation issues and federal court litigation, between January 7, 1992 and January 2, 1993 (Exhibit 12)." I conclude that all court litigation fees expended prior to October 23, 1992 (the second decision) were expended in connection with the first hearing, and I will award only ten percent of those fees or $370.00 ($3697.50 × .10). However, with respect to all attorney fees incurred after October 23, 1992, as the issues involving the two hearings were intertwined, the Court will award the full amount, $5,385.79.

### *ORDER*

For the foregoing reasons, plaintiff's application for attorneys' fees (Docket # 1) is granted in part. Judgment is awarded in the amount of $22,700.79.