W.L.G., a minor, and Nora
Riley, Plaintiffs,

v.

HOUSTON COUNTY BOARD OF
EDUCATION, Defendant.

Civil Action No. 96–T–859–S.

United States District Court,
M.D. Alabama,
Southern Division.

Sept. 2, 1997.

Gregory B. McCain, Bobbie S. Crook, Byrd, Spencer & McCain, Dothan, AL, for plaintiffs.

Jere C. Segrest, Tina Stamps, Hardwick, Hause & Segrest, Dothan, AL, for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiffs W.L.G. (a minor) and Nora Riley (his mother) sue for recovery of compensatory damages, punitive damages, attorneys' fees, and costs from defendant Houston County School Board under the following: the Individuals with Disabilities Education Act, also known as the IDEA, 20 U.S.C.A. §§ 1400–1491o,; §§ 504 and 505 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. §§ 794–794a; the equal-protection and due-process clauses of the fourteenth amendment to the United States Constitution as enforced through 42 U.S.C.A. § 1983; and the Civil Rights Attorney's Fees Award Act of 1976, as amended, 42 U.S.C.A. § 1988. Jurisdiction is based on 28 U.S.C.A. § 1331, 29 U.S.C.A. § 794a(2), and 20 U.S.C.A. § 1415(e). This lawsuit is now before the court for resolution on the parties' joint submission of the record. For the following reasons, the court finds for the Houston County Board of Education.

### I. BACKGROUND

The factual and procedural background as gleaned from the jointly submitted record is as follows:

• W.L.G. is a youth enrolled in the Houston County School System who qualifies, under the IDEA and the Rehabilitation Act, to

receive special services because of his disabilities.

The IDEA provides federal funds to assist state and local schools in providing a "free and appropriate education" for all disabled students. The Act states that its primary purpose is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, ... [and] to assure that the rights of children with disabilities and their parents or guardians are protected." 20 U.S.C.A. § 1400(c).[1] The Act provides for parent participation in all matters related to the child's education, and specifies procedural safeguards to ensure that parents have processes of review to address any decisions or placements which they deem inappropriate or unsatisfactory. § 1415. The IDEA assures parents of the right to examine all records pertaining to evaluation and educational placement of the child, to obtain an independent evaluation of the child, and to receive prior written notice whenever the responsible educational agency proposes or refuses to change the child's placement. § 1415(b).

But the driving force behind the IDEA is the 'individual education plan,' commonly known as the IEP. § 1401(a)(20). The IEP must provide in detail for a disabled child's educational goals and objectives, including measurement techniques, and the related support services to be provided, along with the duration of each service. *Id.* The IEP is developed at a meeting, which must include at least a parent, the child's teacher (who may be a current or a future teacher), and a representative of the local school board. *Id.* The IDEA requires that the local school board "establish or revise, whichever is appropriate, an [IEP] for each child with a disability ... at the beginning of each school year and ... then review and, if appropriate, revise, its provisions periodically, but not less than annually." § 1414(a)(5).

The IDEA further provides that if the parent is dissatisfied with the results before the local school board, she must be provided an opportunity to present a "complaint" and receive an "impartial due process hearing" with respect to the complaint. § 1415(b). If the parent is still dissatisfied, she may invoke additional administrative review by a state educational agency. § 1415(c). Dissatisfaction with the agency's decision may then be subject to judicial review in a federal district court. § 1415(e)(2).

Unlike the IDEA, the Rehabilitation Act applies to all individuals with disabilities, not just students. It protects individuals with disabilities from discrimination by any recipient of federal funds in the provision of services or employment. The Act provides that "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C.A. § 794(a).

■ To establish a violation of § 504 of the Rehabilitation Act, a plaintiff must demonstrate that (1) the student is disabled as defined by the Act, (2) the student is "otherwise qualified" to participate in school activities, (3) the school or the board receives federal financial assistance, and (4) the student was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. *W.B. v. Matula,* 67 F.3d 484, 492 (3rd Cir.1995); 34 C.F.R. § 104.4(a). In addition, to be liable, the school board "must know or be reasonably expected to know of" the student's disability. *Id.* (quoting *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1381 (3d Cir.1991)). However, a plaintiff "need not establish that there has been an intent to discriminate in order to prevail under § 504." *Id.* (quoting *Nathanson,* 926 F.2d at 1384).

---

1. The IDEA was comprehensively overhauled in 1997, Pub.L. No. 105–17, 111 Stat. 37. However, the amendments, which are known as the "Individuals with Disabilities Education Act Amendments for 1997," are either prospective or are not relevant to the issues presented to this court today. Therefore, the IDEA, as addressed in this opinion, is pre–1997 amendments.

- W.L.G. was deemed eligible before the 1988–89 school term and has since continuously received special education services under the IDEA.

- In October 1995, W.L.G.'s attorneys filed a letter with the Houston County School Board requesting a due-process hearing, claiming that W.L.G. was not receiving a "free appropriate public education" through the implementation of his IEP. The letter states that "The Houston County School System has not only refused to properly educate [W.L.G.], they have ridiculed this child and violated his right to privacy because of severe emotional distress." The letter alleges failure to evaluate W.L.G. adequately, provide services, and provide W.L.G.'s records, and further alleges discrimination and continuous retaliatory actions against W.L.G. because of his handicap. W.L.G.'s attorneys charged that the school boards's actions constitute outrageous conduct. The letter requested monetary reimbursement for expenses and attorneys' fees and compensatory and punitive damages.

- On October 20, 1995, the school board responded, asking for a specific statement of the conduct which formed the basis for the allegations and offering an outside independent evaluation, an IEP meeting, and development of a new IEP as needed.

- Receiving no response from W.L.G. and Riley, the school board nonetheless made arrangements for independent assessment of W.L.G.

- The due-process hearing, normally subject to a 45–day time limit, was continued so that the independent evaluation could take place and the parties could attempt to resolve the issues involved.

- On January 10 and 18, 1996, an evaluation of W.L.G. was conducted by an expert retained by the school board.

- On February 15, 1996, W.L.G.'s attorneys responded to the request for more specific allegations. They also made specific suggestions for revisions to the IEP, including the hiring of a behavioral aide to work with W.L.G., not sending W.L.G. home from school for behavior, creating a new "time-out" space for W.L.G., using short work periods, providing rewards, and using "redirection" to deal with W.L.G.'s outbursts.

- The school board responded on February 16, 1996, that the school was already implementing a behavioral plan developed in 1993 which encompassed some of the suggestions made by W.L.G.'s attorney. An offer was again made to conduct an IEP meeting.

- Two new evaluations of W.L.G. were conducted by two professionals at the expense of the school board.

- On April 15, 1996, W.L.G.'s regularly scheduled annual IEP meeting was held.

- The parties reached an agreement, and signed a settlement on April 24, 1996, which incorporated a "behavior management plan."

- On May 22, 1996, W.L.G. and his mother, Riley, filed this lawsuit.

## II. DISCUSSION

Since the passage of the IDEA, courts have struggled with the interaction of it with the Rehabilitation Act, rights enforced by § 1983, and fees provided under § 1988, particularly in regard to the remedies available to aggrieved parents for a school system's failure to provide services to a disabled child. This court's struggle has been made even more difficult because, as the Houston County School Board has aptly pointed out, it is very difficult to understand from W.L.G. and Riley's complaint the nature and extent of the claims they are asserting and the relief they are seeking.

First, though it is clear that W.L.G and Riley seek attorneys' fees and expenses for the work of their attorneys before the due-process hearing officer, which resulted in the settlement agreement, it is unclear whether they are relying on just one or all of the statutes—the IDEA, the Rehabilitation Act, § 1983, and § 1988—mentioned at one time or another in their complaint. The court will assume that they are relying on all the statutes.

Second, it appears, but is not clear, that they claim, based on post-settlement conduct, that the School board has failed to comply with the settlement agreement and they now seek implementation of the agreement. It is

also unclear whether they are relying on just one or all of the above four statutes. The court will assume that they make such a claim and are relying on all four statutes.

Finally, while it is clear that W.L.G. and Riley seek compensatory and punitive damages, it is unclear for what. At one point it appears that they are seeking damages they incurred up through entry of the settlement. At another point, it appears that W.L.G. and Riley are seeking damages incurred since entry of the agreement, based a contention that the school board has failed to comply with the agreement. It is also unclear whether W.L.G. and Riley are relying the IDEA, the Rehabilitation Act, § 1983, and § 1988, or just on one of these statutes. The court will, again, read their claim liberally, to encompass the broadest reading.

## A. PRE–SETTLEMENT COMPENSATORY AND PUNITIVE DAMAGES AND ATTORNEYS' FEES

The court will first turn to W.L.G. and Riley's claims for pre-settlement compensatory and punitive damages and attorneys' fees. Some courts have held that complainants are entitled to compensatory and punitive damages under the IDEA, the Rehabilitation Act, and § 1983. *See e.g., W.B v. Matula,* 67 F.3d 484, 495 (3rd Cir.1995) (damages available under the IDEA and the Rehabilitation Act as enforced through § 1983); *Walker v. District of Columbia,* 969 F.Supp. 794, 796–97 (D.D.C.1997); *see also Smith v. Robinson,* 468 U.S. 992, 1020 n. 24, 104 S.Ct. 3457, 3472 n. 24, 82 L.Ed.2d 746 (1984) ("courts generally agree that damages are available under § 504" of the Rehabilitation Act). In addition, the IDEA, the Rehabilitation Act, and § 1988 in conjunction with § 1983 provide for the award of attorneys' fees. The IDEA provides that, "In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the pre-

vailing party." 20 U.S.C.A. § 1415(e)(4). The Rehabilitation Act provides that, "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 29 U.S.C.A. § 794a(b). And § 1988 provides that, "In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." 42 U.S.C.A. § 1988.

### 1. Waiver

■ The threshold issue for W.L.G. and Riley's claims for presettlement compensatory and punitive damages and attorneys' fees is whether they have waived them under the terms of the settlement agreement. The agreement signed by the parties includes the following statement: "In consideration of the foregoing, Mrs. Nora Riley, the mother of [W.L.G.], on behalf of herself and [W.L.G.], does hereby release, acquit and forever discharge the Board of and from any and all claims, actions, causes of actions, demands, rights, damages, costs, losses, expenses, and compensation whatsoever, arising from and resulting from or in any manner incidental to the request for a due process hearing which was filed on or about October 16, 1995." [2] The school board contends that this clause in the agreement waives all of the claims, including presettlement compensatory and punitive damages and attorneys' fees, that W.L.G. and Riley now attempt to assert. W.L.G. and Riley respond that the claims are not governed by the agreement, which they say relates only to matters within the jurisdiction of the due-process hearing officer.

"Settlement agreements have always been a favored means of resolving disputes. When fairly arrived at and properly entered into, they are generally viewed as binding, final, and conclusive of rights as a judgment." *Thomas v. Louisiana,* 534 F.2d 613, 615 (5th

**2.** Joint submission of record, tab 1.

Cir.1976) (footnote omitted).[3] W.L.G. and Riley do not challenge the propriety of the agreement or contend that it was unfairly negotiated. Turning to the language of the agreement as the best statement of the intent of the parties, the court reaches the conclusion that W.L.G. and Riley released their claims for compensatory and punitive damages. The agreement provides that W.L.G. and Riley release the school board from "all claims, actions, causes of actions, demands, rights, damages …, losses, …, and compensation whatsoever." To reach any other conclusion the court would have to close its eyes to the agreement.

■ This finding does not, however, fully resolve the issue of attorneys' fees, which are not expressly listed in the waiver clause of the agreement. The attorneys' fee provisions in the IDEA (20 U.S.C.A. § 1415(e)(4)) and the Rehabilitation Act (29 U.S.C.A. § 794a(b)) are worded similarly to corresponding clauses in civil rights statutes, such as § 1988. Therefore, courts have held that the appropriate analysis in fee disputes under the IDEA is that developed under § 1988. See, e.g., Urban v. Jefferson County School District R–1, 89 F.3d 720, 728–29 (10th Cir.1996); Downers Grove Grade School District No. 58 v. Steven L., 89 F.3d 464, 468–69 (7th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); Alexander S. v. Boyd, 929 F.Supp. 925, 930 (D.S.C.1995); Kerry B. v. Union 53 Public Schools, 882 F.Supp. 184, 187 (D.Mass.1995), aff'd, 89 F.3d 827 (4th Cir. 1996). This court further concludes that the appropriate analysis in fee disputes under the Rehabilitation Act is that developed under § 1988.

In applying a civil rights attorneys' fee statute where a settlement agreement is silent or ambiguous on the matter, courts have attempted to ascertain the intent of the parties expressed in the agreement in order to determine whether attorneys' fees are within its scope. See Wakefield v. Mathews, 852 F.2d 482 (9th Cir.1988) (holding that broad waiver language included attorneys' fees, ab-

sent any evidence to the contrary); Jennings v. Metropolitan Government of Nashville, 715 F.2d 1111, 1114 (6th Cir.1983) (because "it is not necessary for the parties to have reached a separate settlement on each aspect of the claim in order to reached a settlement in full," settlement included attorneys' fees although fees not mentioned); Parker v. Metropolitan Water Reclamation Dist., 782 F.Supp. 387, 388 (N.D.Ill.1992) (holding that release of "liability, claims and demands," followed by list of specific possible substantive claims not sufficiently broad to include attorney fees, where parties had removed unambiguous language waiving attorneys' fees from agreement); but see Ashley v. Atlantic Richfield Co., 794 F.2d 128, 136 (3d Cir.1986) (placing the burden of proving waiver, where settlement document is silent as to attorneys' fees, on the party losing the underlying litigation).

In particular, this court finds instructive the reasoning of the District of Columbia Circuit Court of Appeals in an attorneys' fee dispute under § 1988. Elmore v. Shuler, 787 F.2d 601 (D.C.Cir.1986). There, a settlement agreement did not expressly waive attorneys' fees, but contained a very broad release clause. The appellate court noted that the waiver clause included a discharge of claims for costs, which is how § 1988 characterizes attorneys' fees. The section provides for the award of "a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988. Consequently, the court found the waiver language to include any future claims for attorney fees "as a part of the costs," stating that the agreement would have had to reserve expressly the issue for the court to find otherwise. Elmore, 787 F.2d at 602. This reasoning applies with equal force to the agreement W.L.G. and Riley signed. The agreement expressly provides for a release of costs, which term expressly includes attorneys' fees not only under § 1988 but the IDEA and the Rehabilitation Act as well. See 20 U.S.C.A. § 1415(e)(4) (providing for award of "reasonable attorney's fees as part of the costs"); 29 U.S.C.A. § 794a(b) (providing for award of "a

**3.** In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

reasonable attorney's fee as part of the costs").

W.L.G. and Riley's response is that they intended the release to relate only to claims which were within the due-process hearing officer's authority, which does not encompass the authority to award attorneys' fees. But W.L.G. and Riley also contend that the demands for money damages were not within the hearing officer's authority. Therefore, if the court were to accept this argument, it would also have to accept that the other monetary award demand provisions are beyond the scope of the agreement. This leaves the bulk of the issues enumerated in the October 16 letter unresolved by the settlement. It seems unlikely, and contrary to other provisions in the agreement—some of which the court will point out below—that the parties intended the settlement to address only a few of the issues before them.

Moreover, it runs contrary to the principles behind the opinion of the Eleventh Circuit Court of Appeals in *N.B. v. Alachua County School Bd.*, 84 F.3d 1376, 1378 (11th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997), to assume that the scope of the settlement agreement is limited to the scope of the relief which a due-process hearing officer can award. In *N.B.*, as will be explained in more detail later, the appellate court rejected the closely related idea that the inability of a hearing officer to award certain types of relief rendered the exhaustion requirement "futile" or "inadequate." 84 F.3d at 1378. The court also held that any § 1983 claims based on alleged violations of the IDEA are subject to the exhaustion requirement. *Id.* Assuming from that holding that a due-process hearing officer has the authority and, indeed, a mandate to hear all claims which could arise from a dispute which are rooted in an IDEA right or obligation, this court cannot assume that a pre-judgment settlement which purports to resolve *all* issues between the parties actually speaks only to some of the claims asserted.

Moreover, W.L.G. and Riley's assertion that the settlement was limited in scope is called into question by other clauses within the agreement—specifically, that "the parties

to this dispute have reached a settlement and desire to resolve *all claims and disputes* between them *arising out of* or *related to* the petitioner's request for a due process hearing," and that "It is further agreed and understood that no promise, inducement or agreement not herein expressed has been made and that this SETTLEMENT AGREEMENT contains the entire agreement between the parties hereto." [4]

The Sixth Circuit Court of Appeals relied on a similar clause in a settlement agreement to support the contention that attorneys' fees were waived by a general release, finding that the inclusion of the clause in the agreement "permits only the single inference that the parties agreed to settle their dispute in full." *Jennings v. Metropolitan Government of Nashville,* 715 F.2d 1111, 1114 (6th Cir. 1983). Similarly, in this agreement, if the parties intended to limit their settlement only to the narrow jurisdiction of the matters within the scope of relief which could be granted by the due-process hearing officer's authority, one would expect to find listed in the agreement a delineation of claims resolved and those reserved for future resolution. That the parties failed to do so supports the inference that the parties intended this to be a full resolution of the matter.

W.L.G. and Riley point to the inclusion of their request for attorneys' fees in their attorneys' original letter request for a due-process hearing ("W.L.G. has been forced to retain an attorney and has incurred substantial legal fees for which he is entitled to reimbursement—this issue will be raised at the appropriate time") as placing the school board on notice that they intended to pursue this matter outside of the settlement agreement. Addressing this argument, the *Elmore* court reasoned that, to the contrary, "[a]lerted to the claim for fees, defendants would reasonably assume that this item had been discharged when plaintiffs agreed" to the sweeping release language within the settlement agreement. 787 F.2d 601, 602; *see also Young v. Powell,* 729 F.2d 563, 566 (8th Cir.1984) (finding that inclusion of attorneys' fees in complaint required that later

4. Joint submission of the evidence, tab 1 (emphasis added).

claim for fees fell within the scope of the settlement agreement). In the settlement agreement agreed to by W.L.G. and Riley, the release includes a specific reference to claims which were "arising from or resulting from or in any manner incidental to the request for a due process hearing which was filed on or about October 16, 1995." From that statement, the Houston County School Board could reasonably conclude that the claims specified within the October 16 letter request were resolved in their entirety by the settlement, including the duly noted clause requesting attorneys' fees.

### 2. Attorneys' Fees: the Merits

Even if W.L.G. and Riley had not waived their rights to pursue attorneys' fees, this court would still find that they are not entitled to a fee award. Under express language in either the IDEA, the Rehabilitation Act, or § 1988, a plaintiff must be a "prevailing party" in order to recover fees. The Supreme Court has stated that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989). W.L.G. and Riley's settlement does not meet that standard.

Courts have struggled with the application of attorneys' fees statutes when a settlement occurs prior to a judgment on the merits, and particularly when the settlement is prior to a due-process hearing under the IDEA. They have evaluated the matter by asking one or both of two questions: one, whether there is a "dispute" between the school authority and the parents; and, two, whether a party has prevailed on the merits based on the terms of the settlement. The Houston County School Board asserts that W.L.G. and Riley have established neither that there was a "dispute" between the parties nor that they were prevailing parties. The court agrees with the school board.

### a. "Dispute" under the IDEA

■ Where there is no underlying conflict between a parent and a school system at the time of the request for the due-process hearing, some courts have found that the lack of a "dispute" prevented the awarding of attorneys' fees. They rely on language from *Texas Teachers*, which requires "at a minimum to be considered a prevailing party ... the plaintiff must be able to point to a resolution of the *dispute* which *changes the legal relationship* between itself and the defendant." 489 U.S. at 792, 109 S.Ct. at 1493, 103 L.Ed.2d 866 (1989) (emphasis added).

In *Payne v. Bd. of Education*, 88 F.3d 392 (6th Cir.1996), a parent challenged a long-term IEP which would have eventually placed her child in home schooling. After the request for a due-process hearing, the school modified the IEP, and the hearing request was dismissed. The court noted that the school "never took a position contrary to that of Payne" and "acknowledged its responsibility for Payne's education," and that the school had begun a multidisciplinary team-meeting process before the due-process hearing request. *Id.* at 398. In sum, this led the trial court to find, and the Sixth Circuit Court of Appeals to affirm, that there was no "dispute" between the parties which would warrant the granting of attorneys' fees to the parent. *Id.*

The Ninth Circuit Court of Appeals used similar reasoning in denying a request for attorneys' fees, holding that "[t]wo IEP meetings, which resulted in a school placement that satisfied the parents, did not give rise to a dispute for the purposes of section 1415(e)(4)(B) of the IDEA." *Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F.3d 68 (9th Cir.1996), *cert. denied*, —— U.S. ——, 116 S.Ct. 1681, 134 L.Ed.2d 783 (1996).

Similarly, the Houston County School Board was not in a "dispute" with Riley over services provided to W.L.G. at the time when the due-process hearing was requested. The school board did not oppose the independent evaluation of W.L.G. or the addition of a new behavioral plan to his IEP. The school board was fully cooperative, and a willing partner in assessing the best method to provide him with an appropriate education. Essentially what happened here is that W.L.G. and Riley's attorneys jumped immediately into the due-process hearing process without first

having taken-up their concerns with the school system by writing the school board and simply requesting meeting to consider modification of W.L.G.'s IEP.

■ The IDEA provides for the award of attorneys' fees only "if an action or proceeding" is brought under the Act; the Act does not provide for fees for actions preliminary, but necessary, to such an action or proceeding. It is implicit from this procedural structure that, before a school system can be saddled with attorneys' fees, the school system must have done something to warrant the "action or proceeding," and, of course, the school system cannot have done something to warrant the "action or proceeding" unless and until the complainant has presented to it a claim which it has rejected or otherwise inadequately addressed. To read the Act otherwise would be to pervert it, for such a reading would allow a complainant to pervert 'all' conduct by a school board into an "action or proceeding," bringing with it an entitlement to attorneys' fees, simply by requesting a due-process hearing, regardless as to whether the circumstances had reached the appropriate evolutionary point that would warrant or justify a due-process hearing. Here, W.L.G. and Riley never gave the Houston County School Board an opportunity to reject or otherwise fail to address adequately their concerns before requesting a due-process hearing. In other words, circumstances had not reached a point where a due-process hearing was warranted.

b. "Prevailing Party" under IDEA

■ Even had the level of the conflict led to a "dispute" for the purposes of the IDEA, W.L.G. and Riley were not "prevailing parties" and consequently are not entitled to an attorneys' fee award. The court reaches this conclusion for two reasons. First, W.L.G. and Riley did not succeed in their primary objectives, nor even produce any evidence on their primary complaints as they were stated at the time of the due-process request; and, second, the relief granted by the school board under the settlement agreement was no more than is routinely required under the provisions of the IDEA, so that a due-pro-

cess hearing request was not necessary to prompt it.

Currently, the law in the Eleventh Circuit is unresolved as to whether the use of the "catalyst" test to determine when a party has "prevailed"—so as to be entitled to an award of attorneys' fees—is still appropriate after the United States Supreme Court decision in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). *See Cullens v. Georgia Dept. of Transp.,* 29 F.3d 1489, 1494–95 (11th Cir.1994) (declining to rule on the continuing use of catalyst test, but recognizing controversy). Under the catalyst test, a plaintiff, who did not necessarily obtain judicial relief in the form of a judgment on the merits, may nevertheless be considered a "prevailing party" upon a showing that the lawsuit prompted some material remedial action. *See, e.g., Royal Crown Cola Co. v. Coca–Cola Co.,* 887 F.2d 1480, 1486 (11th Cir.1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990). Presumably, though they never discuss this standard, Riley and W.L.G. are relying on the use of this test in their claim of entitlement to a fee award.

Though an analysis of case law shows that most courts of appeals still support the catalyst theory in civil rights litigation, *see, e.g., Baumgartner v. Harrisburg Housing Authority,* 21 F.3d 541 (3rd Cir.1994); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. #1,* 17 F.3d 260 (8th Cir.1994); *Craig v. Gregg County,* 988 F.2d 18 (5th Cir.1993); *Paris v. U.S. Dept. of Housing and Urban Development,* 988 F.2d 236 (1st Cir.1993); *American Council of the Blind, Inc. v. Romer,* 992 F.2d 249 (10th Cir.), *cert. denied,* 510 U.S. 864, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993); *cf. S–1 and S–2 v. State Bd. of Education,* 21 F.3d 49 (4th Cir.) (en banc) (deeply divided (7 to 6) court held that, after *Farrar,* a person may not be a prevailing party under a catalyst theory for changes in the opposing party's conduct instigated *after* judgment or dismissal), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994), this court need not reach such a determination in this case. For whether the catalyst analysis is used, or a *Farrar* evalua-

tion is applied, W.L.G. and Riley have not "prevailed."

In finding that W.L.G. and Riley have not prevailed, the court does not mean that W.L.G. had no legal right to the implementation of the IEP plan to which the parties agreed; however, in order to prevail, W.L.G. and Riley have the affirmative burden of demonstrating that the right exists and was vindicated by the relief granted in the litigation. To justify an award of such fees, the prevailing party must show a causal connection between the relief obtained and the litigation in which the fees are sought, that is, "a substantial factor or a significant catalyst in motivating the defendants to end their [illegal] behavior." *Doe v. Busbee*, 684 F.2d 1375, 1379 (11th Cir.1982). In other words, "[a] causal connection exists if the plaintiff's lawsuit was a catalytic, necessary, or substantial factor in attaining the relief.'" *Gerena–Valentin v. Koch*, 739 F.2d 755, 758–59 (2d Cir.1984) (quoting *Commissioners Court of Medina County, Texas v. United States*, 683 F.2d 435, 440 (D.C.Cir.1982)). Congress did not "intend[ ] that fees be awarded to a plaintiff ... who obtained only benefits that the defendant plainly would have conferred even in the absence of a lawsuit." *Gingras v. Lloyd*, 740 F.2d 210, 213 (2d Cir.1984). *See also American Constitutional Party v. Munro*, 650 F.2d 184, 188 (9th Cir.1981) ("The courts have consistently required that plaintiffs seeking to qualify as 'prevailing parties' establish some sort of clear, causal relationship between the litigation brought and the practical outcome realized."); *Correa v. Heckler*, 587 F.Supp. 1216, 1221 (S.D.N.Y. 1984) (plaintiff must establish that her litigation efforts were a "necessary and important factor" in obtaining results).

At bottom, though, whether the final outcome is due to plaintiff's efforts—that is, provoking a defendant into taking certain steps to bring itself into compliance with its legal duties—and thus whether plaintiff has prevailed, is an intensely factual, pragmatic one. Clues to the provocative effects of the plaintiff's legal efforts are often best gleaned from the chronology of events, the nature of the relief sought and obtained, and the role of the plaintiff's action in activating the change. *Fields v. City of Tarpon Springs, Fla.*, 721 F.2d 318, 321 (11th Cir.1983). The court must review, as a question of fact, whether the "action or proceeding" was a significant catalyst in the plan finally adopted and whether the relief attained alleviated the particular illegalities challenged by the plaintiff, that is, whether the plaintiff's legal efforts were the cause in fact of the steps the defendant took to bring itself into compliance with federal law. *See Posada v. Lamb County, Texas*, 716 F.2d 1066, 1072–73 (5th Cir. 1983).

An evaluation of the success of W.L.G. and Riley based on a comparison of the concerns listed in their attorneys' letter of February 15, 1996—the first time any requests for specific services was made—and the terms of the settlement reveals little correlation, certainly not on the major requests, and the related relief had been largely provided or offered before receipt of those demands.[5] The school board did not hire a behavioral aide to work exclusively with W.L.G., did not eliminate calling his parents to remove him from school, and did not construct a time-out facility to isolate W.L.G.. The board did adopt the behavioral plan advocated by the outside expert Nolan, but that plan was viewed by Nolan as a continuation of the plan developed in 1993 by expert Kohl.[6] In many respects, the plan merely reflects the experts' observations of techniques being used by W.L.G.'s teachers, which were then formalized as on-going recommendations. Nolan found that Kohl's 1993 plan was both "appropriate and effective."[7]

The vocational evaluation called for by W.L.G. and Riley had been arranged for well before the due-process request was made, but had not been conducted due to matters beyond the school board's control. In sum, the relief granted to W.L.G. and Riley was, at best, de minimis. *Monticello School Dis-*

---

**5.** Joint submission of record, tab 4.

**6.** In their demand letter, plaintiffs refer to the behavior plan as recommended by both Nolan and Kohl, in essence acknowledging their similarity.

**7.** Joint submission of evidence, Tab 42, at 3–4, 8.

trict No. 25 v. George L., 102 F.3d 895, 908 (7th Cir.1996) (attorneys' fees denied because relief was de minimis); *Schmidt v. Special School District No. 1,* 77 F.3d 1084, 1085 (8th Cir.1996) (same). But more importantly, it was available to W.L.G. without regard to the filing of the due-process request. Here, W.L.G. and Riley "obtained only benefits that the [school board] would have conferred even in the absence of [an action or proceeding]." *Gingras,* 740 F.2d at 213. As stated, circumstances had not reached a point where a due-process hearing was even warranted.

Because W.L.G. and Riley are not prevailing parties under either the IDEA, the Rehabilitation Act, or § 1988, they are not entitled to attorneys' fees under either of these statutes.

### 3. Compensatory and Punitive Damages: the Merits

Even if W.L.G. and Riley had not waived their rights to pursue compensatory and punitive damages, this court would still find that they are not entitled to such damages.

### A. The IDEA

■ The Eleventh Circuit Court of Appeals has stated that the "philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the Act before resorting to the courts to challenge the actions of the local school authorities." *N.B.,* 84 F.3d at 1378; *see also Ass'n for Retarded Citizens v. Teague,* 830 F.2d 158, 160 (11th Cir.1987). The IDEA's exhaustion requirements are as follows:

"Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be *exhausted* to the same

extent as would be required had the action been brought under this sub-chapter."

20 U.S.C.A. § 1415(f) (emphasis added). The Eleventh Circuit gives some "key reasons" for requiring exhaustion, among them (1) to permit the exercise of school board discretion and expertise on issues requiring these characteristics, (2) to allow the full development of technical issues and a factual record prior to the court review, (3) to prevent deliberate disregard and circumvention of school board procedures established by Congress, and (4) to avoid unnecessary judicial decisions by giving the school board the first opportunity to correct any error. *N.B.,* 84 F.3d at 1378–79.

However, the Supreme Court has said that the rule is not to be applied inflexibly, holding that the exhaustion of remedies is not to be required when administrative processes would be "futile" or "inadequate." *Smith v. Robinson,* 468 U.S. 992, 1014 n. 17, 1019 n. 22, 104 S.Ct. 3457, 3469 n. 17, 3472 n. 22, 82 L.Ed.2d 746 (1984). In the *N.B.* case, the plaintiff argued that the exhaustion requirement cannot apply in cases where a plaintiff is seeking a remedy under the IDEA which is beyond the authority of the hearing officer to grant, such as money damages. The Eleventh Circuit rejected outright the premise that such a request renders the administrative process "futile" or "inadequate," reasoning that accepting such an argument would directly contravene the exhaustion requirement's purpose to prevent "deliberate disregard and circumvention of agency procedures established by Congress." *N.B.,* 84 F.3d at 1379. In other words, permitting a plaintiff to avoid administrative process simply by requesting money damages or other relief outside the authority of the due-process hearing officer would, in practical effect, do away with the exhaustion requirement.[8]

Thus, the *N.B.* holding prohibits district courts from entertaining any matters not fully explored through the IDEA's administrative procedures. Because this holding rendered moot the question of the availability

---

8. The *N.B.* court noted that all courts that have considered this argument have rejected it. 84 F.3d at 1379; *see Buffolino v. Bd. of Educ.,* 729 F.Supp. 240, 247 (E.D.N.Y.1990); *Waterman v. Marquette–Alger Intermediate School District,* 739 F.Supp. 361, 368 (W.D.Mich.1990); *Torrie By and Through Torrie v. Cwayna,* 841 F.Supp. 1434, 1442 (W.D.Mich.1994).

of compensatory damages under the IDEA, the *N.B.* court did not reach that issue. 84 F.3d 1376, 1378.[9]

Beyond the initial letter requesting a due-process hearing, W.L.G. and Riley never mention a claim for compensatory and punitive damages, much less detail the arguments behind such claim. There was no development of the factual record prior to court review; indeed, there seems to have been no attempt to raise this claim under the administrative process. Accordingly, W.L.G. and Riley have not met the exhaustion requirement, and their claim for damages under the IDEA is dismissed without prejudice.

### B. Section 1983

■ Applying the same principles as in its IDEA analysis of exhaustion, the Eleventh Circuit in *N.B.* also rejected the argument that the plaintiff need not exhaust administrative remedies in order to bring a § 1983 action for violations of rights established under the IDEA. 84 F.3d at 1378. Relying on a decision by the Second Circuit Court of Appeals, the court refused to treat § 1983 claims based on rights accruing under the IDEA differently from IDEA claims. The court held that "'when parents choose to file suit under another law that protects the rights of handicapped children—and the suit could have been filed under the [IDEA]— they are first required to exhaust the [IDEA]'s remedies to the same extent as if the suit had been filed originally under the [IDEA]'s provisions.'" *Id.* (quoting *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987)). The asserted base for W.L.G. and Riley's civil-rights claim, failure to provide a free and appropriate education in violation of the due-process and equal-protection clauses, is indistinguishable from their IDEA claim. "Nor does the fact that the money damages are sought under § 1983 for violations of the IDEA make any difference." *Id.* Accordingly, W.L.G. and Riley's § 1983 claim is subject to the exhaustion requirement for violations

of the IDEA, it was not exhausted at the administrative level, and it is dismissed without prejudice.

### C. The Rehabilitation Act

As stated, courts generally agree that damages are available under § 504 of the Rehabilitation Act. However, since the controlling decision in *N.R.* does not base its reasoning on the availability or non-availability of damages, but purely on the purposes of the IDEA's exhaustion requirement, the court sees no reason to distinguish this claim from W.L.G. and Riley's claims under the IDEA and § 1983. W.L.G. and Riley are required to exhaust administrative remedies for any Rehabilitation Act claim that is identical to one alleged under the IDEA, and, because they have failed to do so, this court must dismiss their Rehabilitation Act claim without prejudice.

### B. POST–SETTLEMENT COMPENSATORY AND PUNITIVE DAMAGES AND INJUNCTIVE RELIEF

■ The court will turn next to W.L.G. and Riley's claim that the Houston County Board has failed to comply with the settlement agreement. As the court understands, they seek enforcement of the settlement agreement and compensatory and punitive damages for its violation.

The court declines to consider this claim because W.L.G. and Riley have failed, as of yet, to present it to the school board or otherwise to take advantage of the available due-process procedures. A post-settlement enforcement claim should be exhausted, in the same manner as are all other claims, for several reasons. First, W.L.G. and Riley's claim that the school board has failed to comply with the settlement agreement is essentially a "complaint," which, under the IDEA, first should be presented in a due-process hearing. 20 U.S.C.A. § 1415(b).

---

**9.** Courts of appeals have disagreed as to whether compensatory damages are available under the IDEA, but the disagreement, as seen by this court, stems from concern as to whether courts can effectively delineate and limit compensatory damages to actual reimbursement of parents for alternative services for a disabled child rather

than to open the door to school-district liability in a broader sense. Recent amendments to the IDEA may affect courts' future decisions in this regard. *See infra* note 1. In any case, such a decision by this court is not necessary in the instant case.

Second, this reading of the IDEA to require exhaustion of enforcement claims best serves the procedural aims of the Act. An enforcement claim would, ipso facto, be based on post-settlement events. Exhaustion would permit full development of technical issues and a factual record prior to the court review of the claim and would avoid unnecessary judicial decisions by giving the school board the first opportunity to correct any error. *N.B.*, 84 F.3d at 1378–79. Finally and perhaps most importantly, requiring that complainants first present their concerns to the local school board is the most efficient and effective way to address the inherently changing nature of an "appropriate education" for disabled students. The IDEA, as stated, requires that an IEP be "revise[d] ... periodically, but not less than annually." 20 U.S.C.A. § 1414(a)(5). As a result, a settlement will most often be tentative only, for it must always be subject to change, no less than annually, to meet the changing needs of the disabled student. Local school boards, and not courts (whose judges are experts in law, not education, and whose dockets are more likely than not laden with cases), are best equipped to address these needs in a timely and informed manner. Here, W.L.G. and Riley's enforcement claim will perforce implicate changed circumstances since the signing of the settlement agreement. The Houston County School Board should have the first opportunity, either informally in an IEP meeting or more formally in a due-process hearing, to address these new circumstances and redress any failures.

To be sure, it will often be the case that by the time any IDEA complaint reaches a court the student's circumstances will have changed. In such cases, though, it could be argued that the court could then consider subsequent or changed circumstances, for only then could the court provide full and realistic relief. Based on the specific facts presented, the need to provide full and realistic relief could override the need for exhaustion. But then the court would be considering the changed or subsequent circumstances as only incident to a current, viable, and already exhausted IDEA claim. This court does not have before it a currently viable and already exhausted IDEA claim on which to append additional consideration of subsequent or changed circumstances.

## III. CONCLUSION

Courts must be sensitive to the unique purposes behind the IDEA to assist and encourage parents and schools to provide access to "free and appropriate education" for all students, despite any disabilities. While parents such as Riley, who are obviously concerned and active in securing their child's education, are to be encouraged to pursue the remedies specified in the IDEA, they are, foremost, encouraged to work in partnership with local school districts, where they will most likely find caring partners. Where that is not the case, or where attempts at cooperation fail and compromise a child's opportunities, they should certainly seek the full range of remedies available to them.

Here, however, the failure to seek administrative remedies, the broad scope to the waiver associated with the settlement, and the limited remedies agreed to in resolution of the concerns, all require that the court not award monetary or injunctive relief or attorneys' fees. Accordingly, the court finds for the Houston County School Board on all counts in the complaint filed by W.L.G. and Riley on September 5, 1996.

An appropriate judgment will be entered in favor of the Houston County Board of Education and against W.L.G. and Riley, with all claims based on pre-settlement issues dismissed with prejudice and all claims based on post-settlement issues dismissed without prejudice, so as to allow these post-settlement issues to be presented to and considered by the school board in the first instance.