[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16133

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 18, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00468-CV-CAP-1

M.T.V.,
C.T.V.,
C.E.V.,

Plaintiffs-Appellants,

versus

DEKALB COUNTY SCHOOL DISTRICT,
SANDY FOXWORTH, individually, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 18, 2006)**

Before EDMONDSON, Chief Judge, BLACK and FAY, Circuit Judges.

BLACK, Circuit Judge:

This appeal arises from a long-standing dispute between the parents of M.T.V., a child eligible for special education services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, and the DeKalb County School District. Appellants, M.T.V. and his parents, C.T.V. and C.E.V., first argue the district court erred in dismissing their retaliation claims brought pursuant to the IDEA, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, the First Amendment, and 42 U.S.C. § 1983 against the School District and various individual defendants for failing to exhaust the IDEA's administrative remedies. They next argue the district court erred in affirming an Administrative Law Judge's (ALJ's) order requiring them to consent to the School District's request to reevaluate M.T.V, or else forfeit his services under the IDEA. We affirm.

## I. BACKGROUND

A. *Retaliation Claims*

Though cognitively gifted, M.T.V. has several neurological disabilities and attention deficit disorder. His disabilities affect his speech, language skills, motor coordination, and vision. M.T.V. has been eligible for special education services under the IDEA since he enrolled in the School District in 1997. When the School District first evaluated M.T.V., it found him eligible for services only under the

2

IDEA's "Speech and Language Impairment" category, even though his parents also expressed concerns about possible motor impairments. In 1999, M.T.V.'s parents continued to have these concerns and had him privately tested by an independent evaluator. They learned he had significant motor deficits and, in February 1999, asked the School District for an Individualized Education Program (IEP) meeting to discuss adding services to improve his motor skills.

M.T.V.'s parents contend the School District then began what has become "a long history of ongoing retaliation, coercion, intimidation, [and] threats." They allege the School District no longer allowed them to attend IEP meetings before or during school, forcing them to find child care, and began limiting the time allotted for IEP meetings, requiring them to attend multiple meetings and miss work each time. They further allege the School District brought school administrators and lawyers into IEP meetings who would harass and scream at them. They also make numerous related allegations, including that the School District disallowed M.T.V.'s former school occupational therapist from continuing to work with him because she advocated for him at an IEP meeting; placed M.T.V. in a storage closet for occupational therapy; refused to afford them the same privileges as other parents, such as helping in the classroom and attending school functions; and wrote them numerous harassing and intimidating letters.

As their relationship deteriorated, M.T.V.'s parents began pursuing formal complaints against the School District. In April 2000, they filed a federal lawsuit unrelated to this case. They allege the judge orally directed the School District not to treat M.T.V. differently from other children and not to test M.T.V. without parental consent. M.T.V. was then diagnosed with a vision impairment, and his parents asked the school to provide vision therapy as a related service under M.T.V.'s IEP. The school refused, and M.T.V.'s parents began providing the therapy themselves. After the School District denied their request for reimbursement, M.T.V.'s parents requested a due process hearing on the matter. They allege the retaliation only worsened at this point. In fact, they allege the School District devised a scheme to subject M.T.V. to countless needless and intrusive tests, which brings us to their next claim.

B.    *Reevaluation Claim*

In May 2002, M.T.V.'s IEP Team convened to discuss his continued eligibility under the IDEA. The Team first determined he was eligible to continue receiving speech services based on a reevaluation conducted in February 2002. However, over his parents' objections, the Team questioned his continued eligibility for services addressing his motor impairments, which he had been receiving under the IDEA's "Other Health Impaired" (OHI) category since August

4

1999. Because he had made significant progress on his OHI goals, the School District hired an expert to administer several different tests to M.T.V. The School District sent a letter to his parents requesting consent to conduct the reevaluation, explaining M.T.V. was due for his triennial evaluation under the IDEA and his services might no longer be appropriate given his progress.

M.T.V.'s parents refused to consent to the reevaluation, complaining M.T.V. "has been tested and tested and that needless or repetitive testing must be avoided." They argued the evaluation would include several tests unrelated to the OHI category, such as IQ tests and psychiatric evaluations, and asserted this unnecessary testing constituted harassment. After a series of attempts to secure consent from M.T.V.'s parents, the School District requested a due process hearing to enforce its right to evaluate M.T.V. by an expert of its choice. The ALJ ruled in favor of the School District and ordered M.T.V.'s parents to cooperate with the reevaluation.

C.    *Procedural History*

M.T.V. and his parents filed a complaint against the School Board and several defendants in their official and individual capacities, seeking injunctive relief and damages for retaliation in violation of the ADA, Section 504, the IDEA,

the First Amendment, and § 1983.[1]  They also challenged the order entered by the

ALJ requiring M.T.V's parents to consent to the School District's reevaluation.

The district court first dismissed the plaintiffs' retaliation claims because they

were subject to the IDEA's exhaustion requirement, and the plaintiffs had neither

exhausted their administrative remedies nor shown such an effort would have been

futile.  The court then affirmed the ALJ's order, construing the School Board's

motion for summary judgment as a motion for judgment on the record.  M.T.V.

and his parents subsequently filed this appeal against the School District and three

individuals in their personal capacities, Stanley Hawkins and Wendy Jacobs,

lawyers who represent the School District, and Sandy Foxworth, a former special

education administrator for the School District.

## II.  STANDARD OF REVIEW

"We review *de novo* the district court's grant of a motion to dismiss under

12(b)(6) for failure to state a claim, accepting the allegations in the complaint as

true and construing them in the light most favorable to the plaintiff."  *Hill v.

White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  "[T]he usual F.R. Civ. P. 56

---

[1] They also alleged several other claims based on procedural and substantive due process, but have not raised those claims on appeal.  Incidentally, we agree with the district court that both Appellants' initial and amended complaints are "example[s] of 'shotgun pleading' of the sort frowned upon in this circuit" and commend the court for sorting through all of Appellants' claims.

summary judgment principles do not apply in an IDEA case." *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003). Because nothing prevents "district judges from factfinding under F.R. Civ. P. 52 in IDEA cases," their decisions are "better described as judgment[s] on the record." *Id.* at 1313-14 (quotation omitted). We, in turn, review the district judge's interpretations of law de novo and "[w]here the district court does not receive any additional evidence or testimony, this court stands in the same shoes as the district court in reviewing the administrative record and may, therefore, accept the conclusions of the ALJ and district court that are supported by the record and reject those that are not." *Id.* (quotation omitted).

## III. DISCUSSION

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).[2] To meet this end, the IDEA provides funding to assist state and

---

[2] The IDEA was recently amended by the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004). The amendment did not take effect until July 1, 2005 and therefore has no impact on this case. All IDEA citations in this opinion refer to the 1997 version of the statute, which was in effect when the disputes between Appellants and the School District arose.

local agencies in educating children with disabilities. *Id.* § 1400(d). In turn, state and local education agencies must identify children with disabilities and develop annual IEPs for each child. *Id.* § 1414. The IEP is a comprehensive document developed by a team of parents, teachers, and other school administrators outlining the goals of the child, and the special education and related services needed to meet those goals. *Id.* § 1414(d).

The IDEA also provides an extensive framework under which parents can "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." *Id.* § 1415(b)(6). Parents can first request "an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." *Id.* § 1415(f). In Georgia, such hearings are conducted by the Office of State Administrative Hearings. O.C.G.A. § 50-13-41(a)(1). If parents are dissatisfied with the ALJ's decision, they can then bring a civil action in either state or federal court. 20 U.S.C. § 1415(i)(2)(a).

A.    *Retaliation Claims*

Appellants argue the School District and various individual defendants retaliated against them for asserting M.T.V.'s rights under the IDEA, and bring

8

claims based on § 1983, the ADA, Section 504, the IDEA, and the First Amendment. The district court dismissed all claims because Appellants failed to exhaust their administrative remedies as required by the IDEA. We agree their retaliation claims are subject to the IDEA's exhaustion requirement, and Appellants neither exhausted their administrative remedies nor established they were excused from doing so.[3]

The IDEA allows plaintiffs to seek "remedies available under the Constitution, [the ADA, Section 504], or other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(l). Nonetheless, it also subjects these claims to an exhaustion requirement: "[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." *Id.* Thus, whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they

---

[3] "[T]he Court finds dismissal is appropriate for [Appellants'] failure to exhaust necessary administrative remedies as a prerequisite to filing this action." *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996). Because Appellants failure to exhaust their claims precludes judicial review, we have no occasion to decide (1) whether the IDEA's comprehensive enforcement scheme precludes § 1983 actions based on IDEA violations; or (2) whether individuals can be held liable in their personal capacities for retaliation in violation of Section 504 or the IDEA.

9

must first be exhausted in state administrative proceedings. As we have explained, "[t]he philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." *N.B.*, 84 F.3d at 1378 (quotation omitted).

This Court has held "any student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute." *Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420, 1422 n.10 (11th Cir. 1998) (citing *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 991 (7th Cir. 1996)). In *Babicz*, two sisters with chronic asthma filed a complaint seeking compensatory damages and injunctive relief, alleging their school had failed to implement their Section 504 plans, and had retaliated against them and their mother for hiring an attorney. *Id.* at 1421. In affirming the district court's dismissal of their claims, we held "claims asserted under Section 504 and/or the ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA." *Id.* at 1422; *see also N.B.*, 84 F.3d at 1379 (holding litigants cannot "avoid the exhaustion

10

requirement simply by asking for relief that administrative authorities [cannot] grant," such as money damages).

Appellants argue that because "the IDEA does not give parents a right to file actions for retaliation against them," the relief they seek is not "relief available" under the IDEA and, therefore, their retaliation claims are not subject to the IDEA's exhaustion requirement. This position, however, is inconsistent with both *Babicz* and the plain language of the IDEA. In *Babicz*, the complaint alleged the students' parent "was forced out of her position as PTA president; was restricted from moving freely within the school, followed sometimes by school personnel; and was denied a visitor's pass on two occasions." *Babicz*, 135 F.3d at 1421 n.7. In holding the plaintiffs failed to exhaust their remedies, we did not differentiate between the parent's retaliation claims and the claims based on the students' educational plans. *Id.* at 1422.

Furthermore, the IDEA's broad complaint provision affords the "opportunity to present complaints with respect to *any* matter *relating* to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6) (emphasis added). M.T.V.'s parents contend the School District retaliated against them for "advocat[ing] for their son's legal rights to receive an appropriate education and be free from

11

discrimination based solely upon his disabilities." Among other injuries, they allege the School District harassed them at IEP meetings, wrote them intimidating letters in response to their educational demands, and subjected M.T.V. to needless and intrusive testing. Their retaliation claims clearly relate to M.T.V.'s evaluation and education, and, therefore, are subject to the exhaustion requirement. *See Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 51 (1st Cir. 2000) ("Weber's claim of retaliation is literally 'related' to the identification, evaluation, or educational placement of [her] 'child.'"); *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000) (holding all the plaintiff's claims, including that the school "retaliated against [the student] in response to the [parents'] efforts to enforce his educational rights," were subject to the IDEA's exhaustion requirement because they "relate unmistakably to the evaluation and educational placement of [the student]").

Because we hold Appellants' retaliation claims are subject to the IDEA's exhaustion requirement, the question becomes whether Appellants exhausted their administrative remedies or were excused from doing so. M.T.V.'s parents do not allege they ever requested a due process hearing with respect to their retaliation claims, but instead argue they raised the retaliation issue at other due process hearings brought by themselves and the School District. This is insufficient to establish exhaustion. Section 1415(i)(2)(A) of the IDEA, which allows parties to

file an action challenging an ALJ's final decision, provides "any party aggrieved by the findings and decision under this subsection shall have the right to bring a civil action *with respect to the complaint presented* pursuant to this section." (emphasis added).  To pursue claims for retaliation, the plain language of the IDEA required Appellants to file a separate administrative complaint to raise that issue and exhaust all administrative remedies regarding that complaint before filing a judicial action.  They failed to do so.

Appellants also fail to show their non-compliance with the IDEA's exhaustion requirement should be excused.  As we have held, "[t]he exhaustion of . . . administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate."  *N.B.*, 83 F.3d at 1379.  The burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement.  *See Honig v. Doe*, 484 U.S. 305, 327, 108 S. Ct. 592, 606 (1988).  M.T.V.'s parents' speculative allegations of futility and inadequacy simply fail to sustain this burden.[4]  Accordingly, we conclude Appellants failed to exhaust the IDEA's administrative remedies with respect to their retaliation claims and affirm the district court's dismissal of these claims.

---

[4] For example, M.T.V.'s parents allege past administrative proceedings in which they participated suffered from procedural deficiencies.  Even if true, we refuse to construe past deficiencies as a reason for excusing Appellants from exhausting future IDEA complaints.

13

B.      *School District's Right to Reevaluate M.T.V.*

Appellants also argue the district court erred in affirming the ALJ's order requiring them to consent to the School District's request to reevaluate M.T.V by an expert of its choice, or else forfeit his OHI services.[5]  In light of the IDEA's strict reevaluation requirements, we conclude the district court committed no error in granting the School District a judgment on the record.

Before a child with a disability may begin receiving services under the IDEA, "[a] State educational agency, other State agency, or local educational agency shall conduct a full and individual initial evaluation."  20 U.S.C. § 1414(a)(1)(A).  Subsequent evaluations must be conducted "if conditions warrant a reevaluation or if the child's parent or teacher requests a reevaluation, but at least once every 3 years."  *Id.* § 1414(a)(2)(A).

Every court to consider the IDEA's reevaluation requirements has concluded "[i]f a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation."  *Andress v.*

---

[5] Appellants further argue the School District failed to review existing OHI evaluation data, as required by § 1414(c)(1).  We reject this argument.  The May 2002 IEP Team meeting minutes reveal the Team "reviewed progress on objectives related to [OHI] eligibility" and reviewed the "eligibility report of August 19, 1999 for OHI."

*Cleveland Indep. Sch. Dist.*, 64 F.3d 176, 178-79 (5th Cir. 1995); *see also Johnson by Johnson v. Duneland Sch. Corp.*, 92 F.3d 554, 558 (7th Cir. 1996) ("[B]ecause the school is required to provide the child with an education, it ought to have the right to conduct its own evaluation."); *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1315 (9th Cir. 1987) (holding parents must permit mandatory reassessments under the Education of the Handicapped Act, the IDEA's predecessor, if they want their child to receive special education services); *DuBois v. Conn. State Bd. of Ed.*, 727 F.2d 44, 48 (2d Cir 1984) (same).

We agree with these courts and hold the School District was entitled to reevaluate M.T.V. by an expert of its choice. M.T.V. was initially deemed eligible for OHI services in August 1999, making his triennial evaluation for continued OHI eligibility due in 2002. Conditions also warranted a reevaluation because M.T.V. had made significant progress on his OHI goals. Finally, the School District had a right to condition M.T.V.'s continued OHI services on a reevaluation by an expert of its choice because M.T.V.'s initial OHI-eligibility was based primarily on evaluations provided by his parents. We agree "the school cannot be forced to rely solely on an independent evaluation conducted at the

parents' behest." *Johnson*, 92 F.3d at 558.[6]  Accordingly, the district court did not err in affirming the ALJ's order requiring M.T.V. to submit to the School District's reevaluation in order to remain eligible for OHI services.

## IV.  CONCLUSION

The district court did not err in dismissing Appellants' retaliation claims because Appellants failed to exhaust their administrative remedies, which is a prerequisite to filing this action.  The district court also did not err in affirming the ALJ's order because the IDEA plainly gives the School District the right to reevaluate M.T.V. by an expert of its choice.

**AFFIRMED**.

---

[6] We also reject Appellants' argument that the School District's proposed reevaluation would harm M.T.V. because he had already undergone so much testing.  The administrative record does not support this conclusory allegation but, instead, reveals M.T.V.'s parents initiated much of the testing, an action inconsistent with their claim of alleged harm.