Justin POPE, a minor by his next friend Martin Pope his father, and Martin POPE, Plaintiffs,

v.

CHEROKEE COUNTY BOARD OF EDUCATION, et al., Defendants.

Civil Action No. 1:05–CV–2918–JTC.

United States District Court, N.D. Georgia, Atlanta Division.

May 29, 2006.

Ted B. Herbert, Office of Ted B. Herbert, Marietta, GA, for Plaintiffs.

Frank C. Bedinger, III, Hawkins & Parnell, Atlanta, GA, for Defendants.

### ORDER

JACK T. CAMP, District Judge.

Pending before the Court is Defendants' Motion to Dismiss [# 16]. Plaintiffs brought this action against the Cherokee County Board of Education,[1] its superintendent, and ten employees asserting claims for violations of the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, and violations of Georgia law. Defendants contend that the Court should dismiss the federal claims because Plaintiffs failed to exhaust their administrate remedies under the IDEA. The Court **GRANTS** Defendants' motion [# 16].

## I. Factual Background

The following is a summary of the relevant facts, accepting Plaintiffs' well-pled factual allegations as true and construing them in a light most favorable to them, as the Court is required to do at this stage of the proceedings.

### A. The Defendants

Plaintiffs bring this action against a number of defendants asserting federal and state law claims. Cherokee County School District (the "School District") operates the public school system for Cherokee County. Dr. Frank R. Petruzielo is the Superintendent of the School District, and Plaintiffs bring this action against Superintendent Petruzielo individually and in his official capacity. Sarah Hoskins is the Special Education Director for the Cherokee County Board of Education, and Plaintiffs bring this action against Director Hoskins individually and in her official capacity. Ham Kimzey is the former Special Education Director for the Cherokee County Board of Education, and Plaintiffs bring this action against former Director Kimzey individually and in his official capacity. Sherry Green is the Special Education Supervisor for the School District, and Plaintiffs bring this action against Supervisor Green individually and in her official capacity. Dr. Carol Haisten is the former Special Education Supervisor for the School District, and Plaintiffs bring this action against former Supervisor Haisten individually and in her official capacity. Joanne May is the Principal at Chapman Intermediate School ("Chapman"), and Plaintiffs bring this action against Principal May individually and in her official capacity. Cindy Cooper is the Assistant Principal at Chapman, and Plaintiffs bring this action against Assistant Principal Cooper individually and in her official capacity. Lori Thompson and Pat Hagen are teachers at Chapman, and Plaintiffs bring this action against Defendants Thompson and Hagen individually and in their official capacities. Gina Canuel is the speech therapist for the School District, and Plaintiffs bring this action against Defendant Canuel individually and in her official capacity. Finally, Daniel W. Peabody is a police officer for the School District, and Plaintiffs bring this action against Officer Peabody individually and in his official capacity.

### B. The factual allegations supporting Plaintiffs' claims

Plaintiff Justin Pope is a fifteen-year-old autistic student who has attended school in

---

1. The Cherokee County Board of Education is not an entity capable of being sued. *See Cook v. Colquitt County Bd. of Educ.*, 261 Ga. 841, 412 S.E.2d 828 (Ga.1992). The proper party is the Cherokee County School District. The Court shall substitute these parties only for the purpose of discussing Defendants' motion.

the School District since he was seven years old. In addition to being autistic, Justin also suffers from mental retardation.

In March 2001, Plaintiff Martin Pope filed a complaint with the Georgia Department of Education challenging the adequacy of the after school program in which Justin participated. Several months later, and prior to the commencement of the due process hearing before an administrative law judge, the School District and Plaintiff Martin Pope entered into a settlement agreement resolving all the issues in the complaint. In return for withdrawing his request for a due process hearing, the School District agreed to, among other things, "provide necessary and ongoing training for the staff in the after school program to enable the staff to implement Justin's behavior intervention plan." (Ex. B. to Pl.'s Compl. at 2.)

Approximately two and half years after the entry of this settlement agreement, on November 18, 2003, the School District contacted Plaintiff Martin Pope and requested that he come to Chapman and pick up Justin. The School District contacted him because Pat McCullough, the individual who normally supervised Justin after school, was not available. The School District did not have another trained staff member available to supervise Justin.

When Justin arrived at Chapman and stepped off the bus, he immediately began asking for "Pat." Mr. McCullough, however, was not present to meet Justin. As such, a staff member at Chapman then escorted Justin into the cafeteria to wait for his father. Justin continued asking for "Pat" and became increasingly agitated when Mr. McCullough did not arrive to supervise him.

While waiting for his father in the cafeteria, Justin took his thermos out of his backpack, removed the lid, and threw the lid out the cafeteria door. Defendant Thompson went outside to retrieve the lid, and Justin followed her outside. Upon realizing that Justin was outside, Defendant Thompson told him to return to the cafeteria. Justin refused to do so and began spitting and asking for "Pat." Because Justin would not go back into the cafeteria, Defendant Thompson called for several other staff members to assist in handling him. Defendants May, Cooper, Hagen, and Canuel all came outside to assist Defendant Thompson. When these Defendants emerged, Justin sat on the ground and threw his shoes and socks at them. The Defendants then attempted to physically force Justin to stand up and walk back into the cafeteria. Justin resisted, and four of the female Defendants piled on top of Justin in order to restrain him.

As these Defendants restrained Justin, Principal May called for Officer Peabody. Upon arriving on the scene, Officer Peabody grabbed Justin by the hand and led him back into the school. Defendants then placed Justin in a room where he began kicking the door and hitting the plastic window. In response to this display of aggression, Officer Peabody entered the room and handcuffed Justin's hands behind his back. A few minutes after being placed in this room, Plaintiff Martin Pope arrived and took his son home without further incident.

As a result of this event, Plaintiff contends that Justin's development temporarily regressed. Specifically, Plaintiffs contend that Justin's progress was set back at least a year, and it took three months for Justin to partially recover from this event. This action followed.

## II.  Motion to Dismiss Standard

The purpose of a Rule 12(b)(6) motion is to determine whether the plaintiff's com-

plaint states a claim for relief. "The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts" which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the Court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *Powell v. United States*, 945 F.2d 374, 375 (11th Cir.1991).

## III. Analysis

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living...." 20 U.S.C. § 1400(d)(1)(A). In order to meet this goal, Congress provided federal funding to state and local agencies to assist the agencies in educating children with disabilities. In return for receiving federal funding, the agencies must ensure that children with disabilities are guaranteed specific procedural safeguards regarding their public education. 20 U.S.C. § 1415.

The IDEA also provides a mechanism pursuant to which the parents of children with disabilities can present a complaint and receive an impartial due process hearing. 20 U.S.C. § 1415(f)(1)(A); *see also* O.C.G.A. § 50–13–41(a)(1). After a due process hearing before an administrative law judge "[a]ny party aggrieved by the findings and decisions" of the administrative law judge may bring a civil action in either state or federal court. 20 U.S.C. § 1415(i)(2)(A). Parents, however, must first exhaust the administrative remedies available under the IDEA before pursuing their claims in federal court. Moreover, the IDEA subjects claims brought under the Constitution, the ADA, and other Federal laws protecting the rights of children with disabilities to this same exhaustion requirement where the claims relate to the evaluation and education of a child. 20 U.S.C. § 1415(*l*); *M.T.V. v. Dekalb County Sch. Dist.*, 446 F.3d 1153, 1157–58 (11th Cir.2006) ("Thus, whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 404, or the Constitution, they must first be exhausted in state administrative proceedings."); *Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420, 1422 (11th Cir. 1998).

■ Here, all of Plaintiffs' federal claims relate to Justin's education and are subject to the IDEA's exhaustion requirement. Plaintiffs allege that Defendants refused to properly train the after school program staff members who supervised Justin, and this lack of training led to the events that transpired on November 18, 2003. As a result of this alleged failure to provide an appropriate education for Justin, Plaintiffs seek damages for the educational and social setbacks Justin experienced after November 18, 2003, as well as damages for the out-of-pocket costs, travel expenses, costs of private after school care, and loss of time from work. Because the crux of Plaintiffs' claims and alleged injuries relate to Justin's education, all of Plaintiffs' federal claims are subject to the exhaustion requirements of the IDEA.

Plaintiffs, however, have failed to exhaust their administrative remedies. The only request for a due process hearing occurred in 2001, and the parties resolved all the issues regarding Justin's education before an administrative law judge had the opportunity to hear the dispute and create a record for this Court to review. Since entering the settlement agreement in 2001, Plaintiffs have not initiated another request for a due process hearing in order to facilitate the potential resolution of these issues without this Court's intervention, and the informal steps taken by Plaintiffs are not the statutory equivalent of exhaustion. *See generally, Tyler v. San Antonio Elementary Sch. Dist.*, 253 F.Supp.2d 1111, 1118 (N.D.Cal.2003) ("The initiation of a state level review which did not proceed to a due process hearing is not literal exhaustion nor its equivalent."); *W.L.G. v. Houston County Bd. of Educ.*, 975 F.Supp. 1317, 1328 (M.D.Ala.1997) ("A post-settlement enforcement claim should be exhausted, in the same manner as are all other claims. . . ."); *Steward v. Hillsboro Sch. Dist. No. 1J*, No. CV 00–835–AS, 2001 WL 34047100, at *5 (D.Or. Mar.1, 2001) ("There is no logic in allowing a case where settlement has been reached prior to administrative review to circumvent exhaustion, while requiring exhaustion in other cases."). Before bringing suit in this Court, Plaintiffs must first file an administrative complaint raising the issues at the heart of this complaint—i.e., whether Defendants breached the settlement agreement by failing to provide sufficient training to the School District's staff members—and allow the agency an opportunity to use its resources to resolve the issues involved in this dispute. *See M.T.V.*, 446 F.3d at 1159.

Because the Court finds that Plaintiffs were required to exhaust their administrative remedies under the IDEA prior to bringing suit in this Court, and Plaintiffs failed to do so, the Court now turns to the question of whether exhaustion should be excused in this case. Exhaustion under the IDEA is not required where resorting to administrative remedies would prove futile or the available relief is inadequate. *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379; *M.T.V.*, 446 F.3d at 1159. "The burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement." *M.T.V.*, 446 F.3d at 1159. Plaintiffs contend that the alleged injuries cannot be redressed by the IDEA's administrative process and that exhaustion is futile because their claims are for monetary damages for past injuries, and are not education based.

Plaintiffs have not demonstrated that exhaustion is futile in this case. As previously discussed, Plaintiffs' claims and alleged injuries are educational based, and the fact that Plaintiffs contend that the current educational plan is sufficient does not render exhaustion futile. At its heart, this dispute is about a failure to sufficiently provide a public education to Justin and the adverse educational consequences of that failure. Requiring Plaintiffs to proceed under the IDEA's administrative process in such a case is not futile. *See Charlie v. Bd. of Educ. of Skokie Sch.*, 98 F.3d 989, 993 (7th Cir.1996) (Easterbrook, C.J.) ("Both the genesis and the manifestations of the problem are educational; the IDEA offers comprehensive educational solutions; we conclude, therefore, that at least in principle relief is available under the IDEA."); *N.B.*, 84 F.3d at 1379 (holding that a plaintiff may not avoid exhausting the administrative remedies by requesting money damages); *Robb v. Bethel Sch. Dist.*, 308 F.3d 1047, 1052–54 (9th Cir.2002) (requiring exhaustion under IDEA where parents brought action under

Section 1983 requesting money damages to compensate them for lost educational opportunities, embarrassment, psychological injury, emotional distress and humiliation); *Frazier v. Fairhaven Sch. Comm.*, 122 F.Supp.2d 104, 111 (D.Mass.2000).

Finally, Plaintiff's reliance on *McCormick v. Waukegan Sch. Dist. # 60*, 374 F.3d 564 (7th Cir.2004) is misplaced as that case involved allegations of physical abuse leading to serious kidney damage that permanently reduced the student's quality of life. In short, the nature of the student's claims in *McCormick* were physical not educational. *Id.* at 569; *see also Padilla v. Sch. Dist. No. 1.*, 233 F.3d 1268, 1274–75 (10th Cir.2000) (holding that a student with disabilities who suffered a fractured skull and exacerbation of a seizure disorder when placed in an unsupervised, windowless closet did not have to exhaust her administrative remedies under the IDEA because these physical injuries were outside the scope of the IDEA); *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275–76 (9th Cir.1999) (holding that exhaustion was unnecessary where a student was physically tortured by two teachers because of his disability). Here, the Complaint is devoid of allegations of permanent physical injury of the type that might render exhaustion futile. In contrast to the students in *McCormick, Padilla*, and *Witte*, and like the students in *Charlie*, N.B., and *Robb*, Justin's alleged injuries are primarily educational in nature and of the type that the IDEA was designed to redress. Accordingly, exhaustion in this case is not futile, and because Plaintiffs have not exhausted their administrative remedies, their federal claims are subject to dismissal.

## IV. Conclusion

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss [# 16]. The Court **DISMISSES** without prejudice Plaintiffs' complaint. The Court **DIRECTS** the Clerk to **CLOSE** this case.