[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 6, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15742
Non-Argument Calendar

_____

D. C. Docket No. 05-00005-CV-FTM-29-SPC

SCHOOL BOARD OF LEE COUNTY, FLORIDA,

Plaintiff-Appellee,

versus

M. M.,
on behalf of M.M., II, a minor,
J. M.,
on behalf of M.M., II, a minor,

Defendants-Appellants.

_____

No. 08-15743
Non-Argument Calendar

_____

D. C. Docket No. 05-00007-CV-FTM-33-SPC

M. M,

individually and on behalf of

M. M., II, a minor,

J. M.,

individually and on behalf of

M. M., II, a minor,

Plaintiffs-Appellants,

versus

SCHOOL BOARD OF LEE COUNTY, FLORIDA,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(October 6, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

M.M., II ("M.M."), a minor, by and through his parents M.M. and J.M. (the "Parents"), appeals from the district court's final judgment in favor of the School Board of Lee County ("Board") and Vivian Posey ("Dr. Posey"), dismissing their claims for violations of the Individuals with Disabilities Education Act ("IDEA"),

2

20 U.S.C. §§ 1400 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, and various provisions of Florida law.

Pursuant to the IDEA and corresponding Florida laws, Fla. Stat. § 230.23(4)(m) and Fla. Admin. Code Ann. R. 6A-6.0311, the Board is required to provide M.M. with a free appropriate public education ("FAPE"). In order to achieve an "appropriate" education, the school and parents develop an individualized education program ("IEP") together. If they cannot agree on the contents of the IEP, either party may request a due process hearing. Pursuant to Fla. Stat. § 230.23(4)(m)(5), the due process hearing is conducted by an administrative law judge ("ALJ") from the Division of Administrative Hearings of the Department of Management Services. Thereafter, if either party is aggrieved by the findings and decision made by the ALJ in his final order, the IDEA provides that he or she "shall have the right to bring a civil action" which "may be brought in . . . a district court of the United States, without regard to the amount in controversy a civil action." 20 U.S.C. § 1415(i)(2)(A).

In the present case, the district court affirmed the ALJ's final decision in favor of the Board, but vacated the ALJ's factual findings which favored the Parents. On appeal, the Parents argue the district court erred by (1) substituting its judgment for the ALJ's findings of fact, (2) finding that there was no denial of

3

FAPE, and (3) dismissing the Parents' claims of discrimination, malicious prosecution, and breach of contract as originally pleaded.

## I. Background

We briefly review the facts, which are thoroughly documented in nearly thirty pages of findings by the ALJ and well-summarized by the magistrate judge and district court.

M.M., born on December 1, 1996, is a student in Lee County and has been identified as a student with specific learning disability, speech impairment, language impairment, attention deficit hyperactivity disorder ("ADHD") and microcephaly. M.M.'s disabilities make him eligible for services under the IDEA. At all times material to this case, he attended Three Oaks Elementary School ("TOES") in a regular education classroom. Dr. Posey is the principal at TOES.

While M.M. was in kindergarten, he began displaying disruptive behavioral problems. Accordingly, the Parents and the Board jointly developed an IEP, dated February 28, 2003 ("2003 IEP"),[1] to address these problems. Throughout the fall of 2003, M.M.'s behavioral problems continued and the Board and the Parents met on several occasions to discuss M.M.'s specific educational needs. On December

---

[1] Prior to this time, there were other IEPs in place. We only address the IEPs relevant to this proceeding.

18, 2003, the IEP staffing conference was convened, at which time the IEP team informed the Parents that there was a possibility that M.M. could be removed from TOES and placed in a Varying Exceptionalities ("VE") program at another school. The Parents objected to this suggestion and requested additional time in which to seek medical advice regarding treatment for M.M.'s ADHD and to research the VE programs offered at various schools in the district. M.M. began taking medication for his ADHD on February 18, 2004. On February 19, 2004, the IEP team reconvened and completed the IEP it had started in December ("February 2004 IEP"). The IEP team noted that there had been little change in M.M.'s behavior and recommended that M.M. be placed in a VE program.

On March 3, 2004, the Parents requested a due process hearing, specifically challenging the February 2004 IEP's decision to reassign M.M. to another school. During the pendency of this proceeding, "stay-put" protections required M.M. to remain in the placement prescribed in the 2003 IEP.[2] After requesting the due process hearing, the ADHD medication began to have its intended effect and M.M.'s behavior significantly improved. In early March, the IEP team reconvened

---

[2] The "stay put" provision, set forth in 20 U.S.C. § 1415(j), provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child . . . until all such proceedings have been completed."

to consider the change in circumstances and commenced the process of preparing a new IEP to address M.M.'s changed needs.

Thereafter, throughout the month of April, the parties held a number of sessions and prepared an IEP ("April 2004 IEP") which called for M.M.'s then-current placement to remain unchanged, and withdrew the recommendation of moving M.M. to a VE placement. The Parents, although present for the development of the April 2004 IEP, claim that they did not agree to it. The Parents, however, did not request a due process hearing challenging the April 2004 IEP and did not amend their existing request for a due process hearing to include a challenge to this IEP. It is uncontested that on April 28, 2004, the Board implemented the April 2004 IEP and thereafter provided educational and related services to M.M. pursuant to this plan.

## II. Procedural History

The ALJ began conducting the due process hearing for this case in May of 2004. After three days, at the request of the parties, the ALJ recessed the hearing to afford the parties an opportunity to resolve their differences. On May 13, 2004, the parties entered into a partial settlement agreement ("Settlement Agreement"), but did not put this Agreement into evidence before the ALJ. As part of the Settlement Agreement, the Board agreed to provide certain additional services to

6

M.M. and the Parents agreed that "the Board will continue to provide the Student the services the Board began providing on April 29, 2004." Thereafter, the due process hearing recommenced on June 8, 2004 and continued over the course of several weeks. For the remainder of the hearing, the ALJ considered whether the 2003 IEP had provided a FAPE for M.M. during the first half of his first grade year and whether the February 2004 IEP – which was never and would never be implemented – would have provided a FAPE. The ALJ found that it had jurisdiction over these seemingly moot issues under the "capable of repetition, yet evading review" exception to the mootness doctrine. The ALJ did not consider the appropriateness of the April 2004 IEP because the Parents did not request a due process hearing to challenge that IEP.

In its final order, the ALJ found that the Board had committed certain procedural violations in developing and implementing the IEPs at issue, but that such violations did not result in a loss of educational opportunities for M.M., did not seriously infringe the Parents' opportunity to participate in the IEP development process, and did not result in the denial of a FAPE. The ALJ also found that the 2003 IEP and the February 2004 IEP had not been "designed or implemented to adequately address the unique educational needs of M.M. during the first grade." Specifically, the ALJ found that, in order to adequately address

7

the unique educational needs of M.M. prior to his starting his medication, it was "necessary" for the IEP to provide a 1:1 aide, assistive technology, vision therapy, a sensory diet, a gluten-free, casein-free diet, an extended school year ("ESY"), weekly occupational therapy ("OT") services and speech/language therapy. The ALJ noted, however, that because M.M.'s behavior changed so drastically after he began medication, the Parents had not proven by "a preponderance of the evidence that the deficiencies and violations, either jointly or severally, prevented M.M from making educational progress during the portion of the first grade that preceded the start of medication." The ALJ did not order the Board to take any action.

Pursuant to 20 U.S.C. § 1415(i)(2)(A), the Board filed an action in the federal district court for the Middle District of Florida claiming that it was "adversely affected and/or aggrieved by certain provisions of the [ALJ's] Final Order" and asking the court to review the administrative record de novo and "grant such relief as the Court determines is appropriate." The Parents also filed a civil action in the district court seeking, based on the ALJ's findings, reimbursement for M.M.'s educational expenses, the development of an appropriate IEP for M.M., prevailing party costs and attorney's fees, damages and equitable relief. The Parents also asserted for the first time causes of action

alleging due process violations, discrimination, malicious prosecution, and breach of contract. The district court consolidated these two cases.

The district court referred the matter to a magistrate judge for consideration of the IDEA issues. After performing a de novo review of the final order of the ALJ, the magistrate judge issued a report and recommendation ("R&R") in which he found that the Board did substantially comply with the procedures set forth in the IDEA and that the 2003 and February 2004 IEPs were reasonably calculated to enable M.M. to receive educational benefits. Accordingly, the magistrate judge concluded that M.M. had not been denied a FAPE and recommended that the factual findings of the ALJ be vacated and judgment be entered in favor of the Board. The Parents objected to the R&R, but the district court rejected these objections and adopted the R&R in all relevant respects. Accordingly, the district court found that the IEPs at issue provided M.M. with a FAPE and dismissed the claims in the Parents' complaint directly challenging the ALJ's final order, i.e., counts 1, 2, and 3.

At a May 10, 2007 pretrial conference, the district court directed the Parents to file an amended complaint to clarify the issues raised in their remaining causes of action – namely, the claims previously pleaded as counts 4, 5, 6, 7, 8, and 9, which allege due process violations, discrimination, malicious prosecution, and

breach of contract.  The district court informed the Parents that they would have difficulty succeeding on the merits of their claims as originally pleaded, but that if they chose to not file an amended complaint, the case would proceed on the original complaint.  After several unsuccessful attempts, the Parents filed a motion to amend on May 2, 2008, with an attached proposed amended complaint.  The district court found that the proposed amended complaint failed to state claims upon which relief could be granted and denied the motion to amend as futile.[3]  The district court then <u>sua sponte</u> considered the remaining claims as originally pleaded, found them to be without merit, and dismissed them.  Thereafter, the court entered judgment in favor of the Board as to all counts of the original complaint.  The Parents appeal.

### III.  Discussion

**1.     District Court's Standard of Review**

The Parents first argue that the district court erred by substituting its analysis for that of the ALJ.  We do not agree.  Under the IDEA, a district court conducts an entirely <u>de novo</u> review of the ALJ's findings, <u>Bd. of Educ. v. Rowley</u>, 458 U.S. 176, 206-07 (1982), and has the discretion to determine the

---

[3] On appeal, the Parents do not challenge the denial of their motion to amend their complaint.  Accordingly, we consider only the allegations and claims asserted in their original complaint.

10

level of deference it will give to the ALJ's findings. Doe v. Ala. State Dept. of Educ., 915 F.2d 651, 657 n.3 (11th Cir. 1990). The district court must consider the administrative findings of fact, but is free to accept or reject them. Id. Upon a review of the record in this case, we conclude that the district court applied the appropriate standard of review and gave appropriate consideration to the ALJ's findings.

## 2. Free Adequate Public Education

The Parents next argue that the district court erred in finding that the 2003 IEP and the February 2004 IEP did provide M.M. a FAPE. The Supreme Court has formulated a two-part test in analyzing whether a FAPE was provided in cases arising under the IDEA. Rowley, 458 U.S. at 205. The court must determine: (1) whether the state actor has complied with the procedures set forth in the IDEA, and (2) whether the IEP developed pursuant to the IDEA is reasonably calculated to enable the child to receive educational benefit. Id. at 206-07. A procedurally defective IEP does not automatically entitle a party to relief. "In evaluating whether a procedural defect has deprived a student of a FAPE, the court must consider the impact of the procedural defect, and not merely the defect per se." Weiss by Weiss v. School Bd. of Hillsborough County, 141 F.3d 990, 994 (11th Cir. 1998); see also Doe v. Ala. State Dep't of Educ., 915 F.2d 651, 661-63 (11th

11

Cir. 1990) (holding deficiencies failing to impact parental involvement were not sufficient to warrant relief). In this case, both the ALJ and the district court found that the Board failed to comply with certain of the procedures set forth in the IDEA, but both concluded that these procedural violations did not seriously infringe the Parents' opportunity to participate in the IEP formulation or result in a denial of FAPE. As for the substantive challenges to the IEPs at issue, the ALJ found that, prior to M.M.'s beginning his medication, a 1:1 aide, assistive technology, vision therapy, a sensory diet, a gluten-free, casein-free diet, an ESY, and more extensive OT services and speech/language therapy were "necessary." The ALJ concluded, however, that the Parents had not proven that the lack of these services resulted in a denial of FAPE. The district court, after reviewing the administrative record de novo, found that the IEPs were reasonably created to provide a FAPE to M.M. and therefore concluded that the IEPs were not substantively deficient. Specifically, the district court found that the evidence did not support the ALJ's finding that the above-listed services were "necessary" to provide M.M. with an adequate education.

"[W]hether an IEP provided a 'free appropriate public education' . . . is a mixed question of fact and law subject to de novo review." JSK v. Hendry County Sch. Bd., 941 F.2d 1563, 1571 (11th Cir. 1991). However, we review a district

12

court's specific findings of fact only for clear error.  Walker County, 203 F.3d at 1295 n.7.

On appeal, the Parents raise the same arguments that have already been addressed by both the ALJ and the district court.  Specifically, the Parents argue that the Board failed to provide the appropriate procedural protections to ensure parental involvement in the development of the February 2004 IEP and that the 2003 and February 2004 IEPs failed to provide services necessary to ensure that M.M. receives a FAPE.

After conducting a thorough review of the administrative and district court record, we conclude that the district court's factual findings are not clearly erroneous.  The district court, citing to specific evidence in the administrative record, reasonably found that the Parents had a full opportunity to participate in the IEP development process and that the services provided by the IEPs were reasonably calculated to provided M.M. with meaningful educational progress. We also agree with the ALJ, the magistrate judge, and the district court that the IEPs at issue did provide a FAPE to M.M. that was appropriate at the time they were created.  Accordingly, we affirm the district court's dismissal of all claims which are dependent upon a finding that the Board denied M.M. a FAPE.

3.     **Retaliation and Breach of Settlement Agreement**

13

The Parents assert that the district court erred in dismissing their claims of retaliation and deprivation of civil rights, brought under 18 U.S.C. § 1983 and Section 504 of the Rehabilitation Act, and their claim that the Board breached the terms of the Settlement Agreement. The Parents argue that the factual finding that the Board did provide a FAPE is not fatal to their claims that the Board and Dr. Posey retaliated against them during the IEP development process and failed to provide services as required by their Settlement Agreement. For the reasons stated herein, we affirm the dismissal of these claims.

"The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378 (11th Cir. 1996) (quotation omitted) (emphasis added). Thus, exhaustion is a prerequisite to the civil action contemplated by § 1415, and a parent's failure to exhaust administrative remedies by requesting and participating in a due-process hearing will result in dismissal of the civil action. Id.; see also Ass'n for Retarded Citizens of Ala. v. Teague, 830 F.2d 158, 160 (11th Cir. 1987). The IDEA also allows plaintiffs to seek "remedies available under the Constitution, [Section 504], or other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(l). These claims are

14

also subject to an exhaustion requirement: "[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." Id. Accordingly, consistent with the unambiguous statutory language, which provides that a parent may bring an administrative due process hearing challenging "*any* matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child," 20 U.S.C. § 1415(b)(6) (emphasis added), we have interpreted the IDEA's exhaustion requirement as applying to a "broad" spectrum of claims. M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1158 (11th Cir. 2006). Thus, in M.T.V. v. Dekalb County School District, we held that a parent's claims based on past retaliation, which included allegations of harassment at IEP meetings, intimidating letters, and needless and intrusive testing of M.T.V., were "related to" M.T.V.'s education, within the meaning of the IDEA, and therefore subject to the exhaustion requirement. 446 F.3d at 1158. Applying this principle, we conclude that a parent's claim that a school board breached the provisions of a settlement agreement that had resulted from an IDEA due process hearing is also primarily a challenge relating to the provision of a FAPE and must be addressed

15

administratively.  See Babicz v. School Bd. of Broward County, 135 F.3d 1420 (11th Cir. 1998) (noting that any student who wants "relief that is available" under the IDEA must use the IDEA's administrative system, even if he invokes a different statute).  Thus, whether claims asserting the rights of disabled children are brought pursuant to the IDEA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings.  M.T.V., 446 F.3d at 1158.

In this case, we conclude that the Parents' retaliation claims and breach of Settlement Agreement claim "relate to" the FAPE provided to M.M. pursuant to the requirements of the IDEA.  As such, these claims are subject to the IDEA's exhaustion requirement.  Our review of the administrative record shows that the only issues before the ALJ were whether the IEPs at issue had been designed to provide M.M. with a FAPE, and whether the Board violated any procedural safeguards.  The Parents do not allege they ever requested a due process hearing with respect to their retaliation claims or to their breach of the Settlement Agreement claim and there is no evidence that these claims were raised before the ALJ.  This is insufficient to establish exhaustion.  Section 1415(i)(2)(A) of the IDEA, which allows parties to file an action challenging an ALJ's final decision, provides "any party aggrieved by the findings and decision under this subsection shall have the right to bring a civil action *with respect to the complaint presented*

16

*pursuant to this section.*" 20 U.S.C. § 1415(i)(2)(A) (emphasis added). To pursue the claims at issue, the plain language of the IDEA required the Parents to file a separate administrative complaint to raise these issues and exhaust all administrative remedies regarding that complaint before filing a judicial action. M.T.V., 446 F.3d at 1159. Here, they failed to do so. Accordingly, we conclude that the Parents' claims of retaliation and breach of Settlement Agreement were properly dismissed because the Parents failed to exhaust their administrative remedies as required by the IDEA.[4]

## 4.    Malicious Prosecution

Finally, the Parents alleged in their original complaint in district court that Dr. Posey "intentionally provoked an encounter with J.M. in the hallways at TOES" in September of 2004 and thereafter "initiated a criminal complaint against J.M. for battery on a school employee" and "filed a civil complaint against J.M. for repeat violence." Without providing any specific factual allegations, the Parents asserted that both the criminal and civil actions were terminated in favor of J.M. and had been brought without probable cause and instituted with malice. The Parents claim that as a result of the actions of Dr. Posey, "J.M. sustained

---

[4] Although the district court relied on different grounds in dismissing these causes of action, we may affirm on any legal ground supported by the record, regardless of whether the district court relied on that ground. McCabe v. Sharrett, 12 F.3d 1558, 1560 (11th Cir. 1994).

17

damages." Based on these allegations, the Parents asserted a claim of malicious prosecution against Dr. Posey. The district court, adopting the recommendation of the magistrate judge, found that the claim lacked merit and dismissed it.

On appeal, the Parents argue that the district court improperly addressed the merits of this claim. We agree. After denying the Parents' motion to amend their complaint, the district court was without authority to consider the merits of the only remaining non-IDEA claim. At the time the district court dismissed this claim, the case was still in the pleadings stage, there was no scheduling order in effect, no discovery had taken place, and the Parents had been given no opportunity to present evidence in support of their claim. As such, the cause of action was not ripe for consideration on the merits. Accordingly, we vacate this portion of the district court's order and remand this matter for further proceedings only on the Parents' malicious prosecution cause of action.[5]

### IV. Conclusion

For the reasons set forth herein, we AFFIRM the decision of the district court vacating the factual findings of the ALJ and entering judgment in favor of

---

[5] Because all of the federal causes of action in this case have been dismissed, the district court may decline to exercise supplemental jurisdiction over this state law cause of action and may chose to dismiss it without prejudice. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988).

18

the Board and Dr. Posey on counts 1, 2, 3, 4, 5, 6, 7, and 9 of the Parents' original complaint.  We VACATE the dismissal of count 8, malicious prosecution, and REMAND for further proceedings consistent with this opinion.